## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DANNY ROUND,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No. 3:15-cv-00772-JPG** |
| ) | |
| **WEXFORD HEALTH SOURCES, INC.,** ) | |
| **DR. JOHN COE,** ) | |
| **DR. GARCIA,** ) | |
| **DR. HAYMES,** ) | |
| **BEGUM, and** ) | |
| **STEVE DUNCAN,** ) | |
| ) | |
| **Defendants.** ) | |

## <u>MEMORANDUM AND ORDER</u>

**GILBERT, District Judge:**

Plaintiff Danny Round is currently incarcerated at the Lawrence Correctional Center in Sumner, Illinois, but was previously incarcerated at the Stateville Correctional Center in Joliet, Illinois, and before that at a detention facility in Cook County, Illinois. (Doc. 1 at 1-2.) Proceeding *pro se*, Round has filed a complaint pursuant to 42 U.S.C. § 1983 against Wexford Health Sources and a number of prison officials at Lawrence, alleging that all involved were deliberately indifferent when they failed to refer him to surgery for injuries Round sustained to his nose during an altercation with another detainee in Cook County. (*Id.* at 4-10.) Round seeks a declaratory judgment, monetary damages, and injunctive relief. (*Id.* at 10-11.)

This matter is now before the Court for a preliminary review of Round's complaint pursuant to 28 U.S.C. § 1915A. Under 28 U.S.C. § 1915A, the Court shall review a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a government entity." During this preliminary review under § 1915A, the court

"shall identify cognizable claims or dismiss the complaint, or any portion of the complaint," if the complaint "is frivolous, malicious, or fails to state a claim on which relief may be granted" or if it "seeks monetary relief from a defendant who is immune from such relief."

### Background

As of April 2013, Round was being held as a pretrial detainee at a Cook County facility. (*Id.* at 4.)  On April 30, 2013, Round was attacked by another inmate at the facility and knocked unconscious, leading to his transfer from the Cook County facility to Mt. Sinai's emergency department.  (*Id.*)  A physician at Mt. Sinai diagnosed Round with a broken nose and scheduled him for reconstructive surgery.  (*Id.*)  Round was still suffering from dizziness as a result of his head injuries when the time for surgery came, so surgery was postponed pending resolution of those symptoms and a follow-up evaluation.  (*Id.*)  On May 16, 2013, Round was transported from the Cook County facility to John Stroger Hospital for a follow-up appointment.  (*Id.* at 5.)  A physician at John Stroger examined Round's nose and determined that Round needed to have septoplasty – a corrective surgical procedure designed to straighten the nasal septum – as well as reconstructive surgery.  (*Id.*)  Those procedures were slated for July 18, 2013.  (*Id.*)

On July 5, 2013, Round was transferred from the Cook County detention facility to Stateville Correctional Center in Joliet, Illinois.  (*Id.*)  Shortly after the transfer, Round told officials at Stateville of his scheduled surgery, and he was seen by medical personnel affiliated with Wexford Health Sources.  (*Id.*)  A physician's assistant at Stateville reviewed Round's records and then met with him on July 18, 2013.  (*Id.*)  During that meeting, the physician's assistant told Round that Wexford had cancelled his surgical procedures at John Stroger, approved him only for the septoplasty procedure, and recommended that the surgery be performed at the University of Illinois at Chicago, rather than at John Stroger Hospital.  (*Id.*)

On August 7, 2013, before the septoplasty procedure could take place, Round was transferred again – this time to Lawrence Correctional Center.  (*Id.* at 6.)  On August 15, 2013, Round was examined by Dr. Coe at Lawrence, who told Round that he would request his medical records and then "send him out for the septoplasty surgery."  (*Id.*)  A little over a week later, Round saw Dr. Coe again, and Coe told Round that all procedures had been denied because "the State of Illinois is broke," and absent a risk of death, no surgery would occur.  (*Id.*)  Round expressed his outrage to Lawrence officials about this decision, as Round needed both procedures to fix his facial injuries and address his "lack of oxygen" and other sinus and respiratory complications.  (*Id.* at 6-7.)  The officials held fast, and Round – unsatisfied with the refusal – filed a § 1983 complaint in this Court on July 17, 2015.  (*Id.* at 1, 6-7.)

## Discussion

Round's complaint focuses on individual claims against various medical staff, so the Court will start there (**Count 1**).  To put forth a viable medical claim under the Eighth Amendment, Round must allege that officials were "deliberately indifferent to his serious medical needs."  *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000).  This claim involves a two-part inquiry:  the plaintiff must first show that his condition "was objectively serious," and he must then allege that the defendants were deliberately indifferent towards his condition.  *Id.*

For screening purposes, Round has alleged the existence of an objectively serious medical condition.  An objectively serious condition is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001).  Factors that indicate a serious condition include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the

presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997).  Here, Round's nasal conditions qualify as serious for screening review purposes.

In addition, Round has alleged that Coe, Garcia, Haymes, and Begum acted with deliberate indifference towards his medical needs.  To be sure, deliberate indifference is a weighty state of mind requirement – allegations of "medical malpractice, negligence, or even gross negligence" do not "equate to deliberate indifference."  *Johnson v. Doughty*, 433 F.3d 1001, 1012-13 (7th Cir. 2006).  And because negligence is not actionable under the Eighth Amendment, a prisoner's allegation that he was not given the specific care that he wanted or that he disagrees with a doctor's course of treatment usually states no claim.  *Forbes v. Edgar*, 112 F.3d 262, 264 (7th Cir. 1997).  However, a prison doctor's refusal to follow the advice of a medical specialist might constitute deliberate indifference, depending on the circumstances of the refusal.  *See*, *e.g.*, *Perez v. Fenoglio*, – F.3d –, 2015 WL 4092294, at *5 (7th Cir. July 7, 2015) ("Allegations that a prison official refused to follow the advice of a medical specialist for a non-medical reason may at times constitute deliberate indifference."); *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011) ("Allegations of refusal to provide an inmate with prescribed medication or to follow the advice of a specialist can also state an Eighth Amendment claim.").  Here, Round says that Coe failed to follow the recommendations of physicians at Mt. Sinai Hospital and John Stroger Hospital, and at least a few of those doctors appear to be specialists. (*See* Doc. 1 at 4-5; Doc. 1-1 at 3-8.)   So Round has put forth an arguable claim against Coe for purposes of screening.  Round also suggests that Garcia, Haymes, and Begum had a hand in the decision to refuse surgery, and the exhibits attached to Round's complaint indicate that Garcia, Begum, and Haymes were involved in the denial of a medical appeal related to Round's surgery.

(*See* Doc. 1 at 6-9; Doc. 1-2 at 73-75.)   While it is a closer case, those allegations and the material in the exhibits are enough to state an arguable claim against Garcia, Begum, and Haymes.   Accordingly, **Count 1** may proceed as to Coe, Garcia, Haymes, and Begum.

Round also appears to bring a § 1983 claim against Wexford Health Sources (**Count 2**). For purposes of § 1983, the courts treat "a private corporation acting under color of state law as though it were a municipal entity," *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 766 n.6 (7th Cir. 2004), so Wexford will be treated as a municipal entity for this suit.   "[T]o maintain a § 1983 claim against a municipality, [a plaintiff] must establish the requisite culpability (a 'policy or custom' attributable to municipal policymakers) and the requisite causation (the policy or custom was the 'moving force' behind the constitutional deprivation)."   *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002) (*quoting Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978)).   Here, construing Round's complaint liberally, Round claims that Wexford had a policy or pattern of refusing care for budgetary reasons – a pattern that led to the refusal to order his surgery.   (Doc. 1 at 8-9.)   This is sufficient to raise an arguable claim against Wexford, so **Count 2** will proceed against it.   *E.g.*, *Brown v. Ghosh*, No. 09-cv-02542, 2010 WL 3893939, at *9 (N.D. Ill. Sept. 28, 2010); *McDonald v. Wexford Health Sources*, No. 09-c-4196, 2010 WL 3034529, at *3 (N.D. Ill. July 30, 2010).   However, at this time, Count 2 will only proceed against Wexford "for injunctive relief" only, as Round has limited his complaint in that fashion. (Doc. 1 at 2.)   If Round wishes to seek broader relief against Wexford, he should file an amended complaint that abides by Federal Rule of Civil Procedure 15 and the Court's local rules.

That only leaves Round's decision to name Warden Duncan in this case.   There is some confusion in the complaint about whether Round wishes to pursue a standalone claim against Duncan:   Round states that Duncan was involved in the grievance process related to his

surgeries, which could suggest a desire to raise an individual claim against him, but he also indicates that Duncan is only sued in his "official capacity for injunctive relief," suggesting that he wants to keep Duncan in this case only to respond to injunctions (per *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011)).  The Court will take Round at his word and assume that he is not attempting to raise an individual claim against Duncan, but only wishes to keep Duncan in the suit to respond to injunctive orders.  Round is free to file an amended complaint to pursue broader relief if he wishes, so long as he abides by Rule 15 and any local rules.

One closing note is in order concerning injunctive relief.  In his complaint, Round requests "injunctory" relief in the form of an order requiring Wexford or Duncan to refer him to surgery for his nasal conditions.  Round does not indicate that he seeks a preliminary injunction related to this relief, and he has not filed a motion for a temporary restraining order or a preliminary injunction with his complaint.  Accordingly, the Court does not understand Round as asking for preliminary injunctive relief at the early stage of his case.

## Disposition

**IT IS HEREBY ORDERED** that, for the reasons stated, **COUNT 1** shall **PROCEED** against **COE**, **GARCIA**, **HAYMES**, and **BEGUM**.

**IT IS FURTHER ORDERED** that, for the reasons stated, **COUNT 2** shall **PROCEED** against **WEXFORD HEALTH SOURCES**, but only in its official capacity for injunctive relief.

**IT IS FURTHER ORDERED** that, for the reasons stated, **COUNTS 1** and **2** shall also **PROCEED** against **DUNCAN**, but only in his official capacity to respond to injunctive orders.

**IT IS FURTHER ORDERED** that the Clerk of Court shall prepare for Defendants **COE**, **GARCIA**, **HAYMES**, **BEGUM**, **DUNCAN**, and **WEXFORD HEALTH SOURCES**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6

(Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered) a copy of every pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.  Any paper received by a judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

**IT IS FURTHER ORDERED** that Plaintiff's pending Motion for Recruitment of Counsel (Doc. 3) is **REFERRED** to a United States Magistrate Judge for consideration.

Further, this entire matter is **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action.

**IT IS SO ORDERED.**

**DATED: August 17, 2015**

<u>*s/J. Phil Gilbert*</u>
**Judge J. Phil Gilbert**
**United States District Judge**